| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, STATE OF COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: April 1, 2021 10:18 AM<br>FILING ID: CUR14ESE8DD<br>▲ COURT USE ONLY ▲<br>CASE NUMBER: 2021CV31081 |
| **Plaintiffs:** ALPERT SIGNATURE HOMES, INC., a Colorado corporation,<br><br>v.<br><br>**Defendant:** OHIO SECURITY INSURANCE COMPANY, a New Hampshire corporation. | Case Number:<br><br>Div: |
| GRIFFITHS LAW PC<br>Duncan Griffiths, #46365<br>Kimberly Newton, #53388<br>10375 Park Meadows Drive, Suite 520<br>Lone Tree, CO 80124<br>(303) 858-8090<br>duncan@griffithslawpc.com<br>knewton@griffithslawpc.com<br>ATTORNEYS FOR PLAINTIFF | |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Alpert Signature Homes, Inc., by and through its attorneys, Griffiths Law PC, hereby submits this Complaint and Jury Demand as follows:

## JURISDICTION AND VENUE

1. Plaintiff Alpert Signature Homes, Inc. ("ASH") is a Colorado corporation with a registered agent, Brian Alpert, and its principal office is located at 1201 S. Parker Road, Suite 200, Denver, Colorado 80231.

2. Defendant, Ohio Security Insurance Company ("Ohio Security") is a New Hampshire insurance company, NAIC # 24082, in good standing with a principal office address at 175 Berkeley Street, Boston, Massachusetts 02116.

3. Ohio Security's registered agent is Corporation Service Company, located at 1900 W. Littleton Boulevard, Littleton, Colorado 80120.

4. At all times relevant to this dispute, Ohio Security marketed and sold commercial general liability coverage to insureds doing business in the State of Colorado.

5. This dispute involves commercial general liability coverage, produced by Ohio Security and issued to MC-Air Heating & Cooling, LLC ("MC-Air") for HVAC installation work at real property located at 6926 Archer Place, Denver, Colorado 80230 ("the Property").

1

EXHIBIT
A

6.  This Court has personal jurisdiction over Ohio Security under Colorado's long-arm statute, which provides, in pertinent part, as follows:

> "Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> …Contracting to insure any person, property, or risk residing or located within this state at the time of contracting[.]"
>
> C.R.S. § 13–1–124(1)(d).

7.  Upon information and belief, Plaintiff alleges that Defendant's insuring agreement contains a provision to resolve any dispute regarding coverage in the State of Colorado and pursuant to Colorado law.

8.  Venue is proper in Denver County because Ohio Security provided commercial general liability coverage insuring persons, property, or risks concerning real property located in the City and County of Denver.

9.  ASH suffered damages, and the amount in controversy is less than $75,000; therefore, C.R.C.P. 16.1 applies.

## GENERAL ALLEGATIONS

10. ASH was the builder and general contractor on a construction project for improvements to the Property in 2018. One such improvement included installing an HVAC system.

11. ASH and MC-Air entered into a Subcontract Agreement in May of 2018. *See* **Exhibit 1**, *Construction Master Subcontract Agreement.*

12. Under the Subcontract, MC-Air agreed to install an HVAC system as a subcontractor of ASH at the Property.

13. As the project's general contractor, ASH required its subcontractors, including MC-Air, to procure and maintain general liability insurance coverage with policy limits of at least $1 million per occurrence to cover property damage liability.

14. ASH also expressly required MC-Air to coordinate with its insurance carrier to ensure it endorsed ASH as an additional insured under MC-Air's insurance policy.

15. MC-Air obtained a commercial general liability policy, No. BKS57427857, effective during a policy period from July 8, 2017, through July 8, 2018. MC-Air also received and produced a certificate of liability insurance that expressly identified ASH as an additional insured. *See* **Exhibit 2**, *Certificate of Liability Insurance.*

16. As a Certificate Holder, ASH is an additional insured under the policy per the following description:

> "…Alpert Construction, and their respective officers, agents and employees, and any additional entities as Owner may request as Additional Insured(s) if required by written contract or written agreement subject to General liability Blanket Additional Insured Provision."

17. Based on the insurance certificate, MC-Air obtained a blanket additional insured endorsement covering ASH as an additional insured under the Subcontract.

18. After MC-Air completed the work, Homeowners learned that the HVAC system MC-Air installed was insufficient and defective to adequately service the Property due to improper installation of the equipment and ductwork.

19. The Homeowners sent a Notice of Claim letter to ASH and demanded damages to fix MC-Air's defective work and refusal to honor its obligations under the warranty process.

20. The Homeowners provided several repair estimates that included costs to tear out drywall and other finishes to access and repair MC-Air's defective work. The Homeowners also alleged loss of use of portions of their premises due to substantial heating and cooling problems throughout the house arising from MC-Air's scope of work.

21. MC-Air initially respondent to the Homeowner complaints but failed to adequately address the concerns. MC-Air's actions and comments to the Homeowners exacerbated the situation by forcing ASH to step in as the Homeowners were threatening wide-scale litigation against ASH because of MC-Air's behavior. ASH was forced to intervene to negotiate a resolution with the Homeowners.

22. As part of these efforts, ASH incurred added expenses to retain Bob Barrett to conduct a preliminary inspection of MC-Air's HVAC system and installation and prepare a report of its findings.

23. In a report dated September 10, 2019, Mr. Barrett identified the recommended scope of work required to repair defects in the HVAC system.

24. However, the Homeowners rejected Mr. Barrett's proposal and submitted competing repair options that were approximately $50,000 or more. Their repair demands included the removal and replacement of defective ductwork that MC-Air was responsible for installing.

25. On October 17, 2019, ASH timely tendered a claim to MC-Air and Ohio Security seeking indemnification as an additional insured on MC-Air's General Liability Insurance Policy No. BKS57427857.

26. ASH enclosed copies of the Subcontract and Insurance Certificate along with the tender letter it sent to Ohio Security Insurance Company.

27. The documents provided were sufficient to establish that Ohio Security's obligations to indemnify ASH as an additional insured.

28. The Property was later purchased byTimothy Roth and Daniel McGillicudy ("Homeowners").

29. ASH tendered a follow-up demand to MC-Air and Ohio Security on November 15, 2019.

30. Ohio Security failed to respond to either tender letter regarding the above claims.

31. After receiving no response from MC-Air or Ohio Security, ASH had no choice but to negotiate and settle with the Homeowners to avoid incurring significant additional liability, reputational and advertising injuries, legal fees, and other expenses.

32. ASH resolved the issue by paying the Homeowners $32,744.96 in exchange for a complete release of liability which included a release in favor of MC-Air and other subcontractors.

33. ASH then retained counsel and filed a lawsuit against MC-Air on March 9, 2020, after completing the CDARA notice of claim process. This matter has proceeded to arbitration and the case is still pending.

34. Ohio Security failed to investigate, defend, or indemnify ASH for its losses related to the defects and resulting damage arising from MC-Air's scope of work.

35. ASH has been forced to incur additional legal expenses and costs to pursue both MC-Air and Ohio Security to seek indemnification for its losses.

36. Based on the facts and circumstances, Ohio Security's delays and refusal to respond to ASH's demand for indemnification constitute an unreasonable delay or denial of a claim for insurance benefits owed under Colorado law.

37. In addition to incurring the costs of repairing the Property's HVAC system, ASH has suffered additional losses for added interest, attorney fees, litigation costs, and other consequential damages recoverable by contract or Colorado law.

## FIRST CLAIM FOR RELIEF
### (Bad Faith Breach of Insurance Contract Pursuant to C.R.S. § 10–3–1115, *et. al.*)

38. ASH incorporates by reference the allegations above as though fully re-alleged here.

39. As an additional insured, ASH As a first-party claimant, additional insured, and intended beneficiary of MC-Air's commercial general liability policy, ASH is entitled to seek damages as a first-party claimant for benefits Ohio Security owed.

40. ASH tendered a claim to Ohio Security as soon as reasonably practicable to recover benefits accrued as an additional insured under the policy.

41. Ohio Security delayed or otherwise denied payment of a covered benefit owed to ASH without any reasonable basis.

42. Ohio Security's unreasonable delay or denial of coverage constitutes a bad faith breach of insurance contract under Colorado law.

43. Ohio Security knew or should have known that it was unreasonable to ignore its obligations to provide ASH with coverage as an additional insured under the policy or otherwise withhold payment.

44. As a direct and proximate result of Ohio Security's bad faith breach of insurance contract, ASH suffered damages in an amount to be determined at trial, along with all other available remedies provided per C.R.S. § 10–1–116.

## SECOND CLAIM FOR RELIEF
**(Breach of Contract)**

45. ASH incorporates by reference the allegations above as though fully re-alleged here.

46. MC-Air entered into an insuring agreement with Ohio Security to provide a commercial general liability policy for its work as a subcontractor, including its work on the Property.

47. MC-Air specifically negotiated with Ohio Security and obtained an insurance certificate naming ASH as an additional insured as contractually required.

48. By including ASH as an additional insured under the policy, ASH is an intended third-party beneficiary of Ohio Security's insuring agreement.

49. Ohio Security breached the insuring agreement by failing to indemnify ASH for the property damage as a covered loss under the policy.

50. ASH substantially complied with its obligations under the contract by providing notice to MC-Air and tendering a claim on time to Ohio Security seeking indemnification.

51. As a direct and proximate result of Ohio Security's breaches, ASH suffered damages in an amount to be determined at trial.

## RELIEF REQUESTED

Based on the allegations and claims above, ASH is seeking relief as follows:

1. For damages in an amount to be determined at trial for Ohio Security's failure to indemnify ASH for the amounts owed to it under the applicable insurance policy;

2. For damages in an amount of two times the covered benefits to be determined at trial as statutory damages under C.R.S. § 10–3–1116;

3. For damages in an amount to be determined at trial for Ohio Security's breach of contract;

4. For reasonable attorney fees recoverable under C.R.S. § 10–3–1116 ;

5. For other consequential damages arising from the breach;

6. For interest and litigation costs, including expert fees and additional costs recoverable by law or contract;

7. For indemnification of all funds paid toward a settlement arising from MC-Air's work; and

8. For such other and further relief that the Court deems just and proper.

Respectfully submitted this 1st day of April, 2021.

                        GRIFFITHS LAW PC

                        */s/ Duncan Griffiths*
                        Duncan Griffiths, #42618
                        Kimberly Newton, #53388
                        10375 Park Meadows Drive, Suite 520
                        Lone Tree, CO 80124
                        (303) 858-8090
                        ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
1201 S. Parker Road, Suite 200
Denver, Colorado 80231